UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 03-CR-10331-RGS |
| | ) | |
| JULIO GRANDE | ) | |
| | ) | |

SENTENCING MEMORANDUM OF JULIO GRANDE

The defendant, Julio Grande, files this memorandum asking the Court first, when calculating his guideline range, to decrease the offense level by four levels to reflect his minimal participation in the offense under U.S.S.G. § 3B1.2 (b).  Mr. Grande also requests that the Court impose a sentence below the range which would result from application of the federal sentencing guidelines, pursuant to 18 U.S.C. § 3553 and the Supreme Court's decision in *United States v. Booker* and *United States v. Fanfan*, 125 S. Ct. 738 (2005).

**I.     Introduction**

   **A. Procedural History**

On May 28, 2004, Julio Grande was arrested in Miami, Florida.  He was in custody until August 9, 2004, when he was released on pretrial conditions to live under house arrest in the home of his sister in North Port, Florida.  Until very recently he was on an electronic bracelet, and the only time he could leave his sister's home was to go to church on Sundays.  He has never violated any condition of his release.

Mr. Grande pled guilty on October 13, 2005.  At the time of his sentencing, on January 31, 2006, he will have served approximately two months in custody.

B. **Statement of the Offense**

Mr. Grande pled guilty to conspiracy to commit money laundering and engaging in monetary transactions in property derived from specified unlawful activity. His co-conspirators were Ivan Velez, Claudia Navarro, and Oscar Patino. As set forth in ¶¶ 51-56 of the Presentence Report, Mr. Grande is guilty under a theory of "wilful blindness." He did not know his co-defendants or ever meet them or communicate with them. He was recruited into the conspiracy by a female business acquaintance in Columbia, Gloria Chacon, who proposed to him that she use his bank account in Florida. This woman would deposit money into his account and would ask him to write checks for her. Mr. Grande was not the source of the money in question, nor did he know the source of the money; all he knew was that it was deposited into his account. When he was instructed to do so, he wrote checks to various businesses as directed. Unlike his co-defendants, he had no interest in the businesses to which the money was going. He did not make any decisions about when, where, or in what manner the money was to be placed in his account or distributed out of it.

C. **Personal History of Julio Grande**

Mr. Grande is fifty years old. He is married to Luisa Fernanda Gordillo, who resides in Columbia with their two young sons, Daniel, eight years old, and Krizten, four years old. Mr. Grande is a dentist, and in addition to having his own practice, for many years he worked for his brother's dental supply company, based in Miami. In this capacity he would travel extensively,

demonstrating new dental products and developing new customers for the company.[1] He was returning home to Columbia after one such business trip when he was arrested in this case.

Mr. Grande is a slightly overweight man who stands 5' 4". He is extremely soft-spoken and when talking about his arrest, the circumstances of the offense, and his long absence from his family, he frequently begins trembling and crying. He has never been in trouble before in his life. For further discussion of his character and personal characteristics see Part III, below.

II.     **The Court should give Mr. Grande a reduction for his role in the offense.**

As stated above in part B, Mr. Grande is guilty under a theory of "wilful blindness." He did not know or ever meet or communicate with his co-defendants. He allowed money to be deposited into his account and he wrote checks at the direction of Ms. Chacon to distribute the money. He did not fly to Miami to pick up large quantities of cash from Ivan Velez, as did his co-defendant Oscar Patino. Nor did he receive "large bundles of money orders via delivery companies," as Oscar Patino and Claudio Navarro did. Thus he meets the criteria for minimal participation in the offense under U.S.S.G. § 3B1.2 (b) and application note 4, which states that circumstances such as a "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." Thus, Mr. Grande's total offense level should be 21, and so his guideline imprisonment range should be 37- 46 months.

---

[1] Attached to this memorandum as "F" is a letter from a dental supply manufacturing company which confirms this aspect of Mr. Grande's employment.

**III.     Argument for Booker variance based on 18 U.S.C. § 3553 considerations.**[2]

**A.  Nature and circumstances of offense and history and characteristics of defendant**.

The crime to which Mr. Grande has pled guilty is non-violent.  There is no victim.  This is not a situation where Mr. Grande was a "broker" for drug dealers or even had any contact with drug dealers.  Mr. Grande was not the organizer of this activity.

Mr. Grande is a fifty-year-old dentist with a wife and two small children in Columbia.  As his wife writes in her letter, attached as "A," in the almost two years since Mr. Grande has been under house arrest in Florida, unable to work, she has struggled to support her children without him.  She writes, "I have had to sell all the parts that made up his office, the chair, the instruments, the machinery and equipment that he worked with, even the furniture and the electrical appliances for the house as well as every valuable item we had in order to support my children.  I have also had to borrow money from relatives.  I am heavily in debt, and the situation

---

[2]The sentencing factors which *Booker/Fanfan* require the district courts to consider include:
   (1) the nature and circumstances of the offense and the history and characteristics of the defendant [§ 3553(a)(1)];
   (2) the need for the sentence imposed to
       (A)  reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
       (B)  to afford adequate deterrence to criminal conduct;
       (C)  to protect the public from further crimes of the defendant; and
       (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [§ 3553 (a) (2)];
   (3) the kinds of sentences available [§ 3553 (a) (3)];
   (4) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range [§ 3553 (a) (4) & (a) (5)];
   (5) the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct [§ 3553 (a) (6)]; and
   (6) the need to provide restitution to victims of the offense [§ 3553 (a) (7)].

becomes more difficult every day." Mr. Grande asks the Court for leniency so that he may return to Columbia and resume providing for his family financially.

Mr. Grande is by all accounts a loving, devoted father to his two young sons. His wife writes that the children are suffering emotionally because of the absence of their father. His sons have been able to come to the United States in the past few months and visit their father, but as their mother writes, it will be very hard for them to understand why he will not return to Columbia with them.

The letters of support attached to this memorandum demonstrate that Mr. Grande is a sensitive, caring individual who is deeply connected to his family and for whom the commission of this crime was totally out of character. The letters express shock that he has gotten into trouble and hope that he might be able to return to Columbia and resume supporting his family.

**B.  The need for the sentence to provide just punishment**.

Mr. Grande spent almost fourteen months under house arrest in Miami, unable to work or go anywhere except to church once a week. Prior to that he was in custody for over two months.

Because of his immigration status, whatever sentence the Court gives Mr. Grande will be harsher than if he were a citizen. When he is designated by the Bureau of Prisons, Mr. Grande will not be eligible for low-security institutions because of his immigration status. Nor will he be eligible for early release to a halfway house. A lower security setting would be more appropriate for Mr. Grande, as he is not physically robust, and he is quite obviously emotionally vulnerable. Unfortunately he is ineligible for such placement.

Finally, when Mr. Grande finishes serving whatever sentence the Court gives him, he will be held an additional period of time, almost certainly a matter of months, before being deported to Columbia.

### C.  Mr. Grande is not at risk to recidivate.

When Mr. Grande finishes whatever sentence the Court gives him, he will be deported to Columbia with no possibility of returning to the United States.  He is at no danger to recidivate, both because of the devastating consequences this case has had on him personally and because he will never be able to return here.

### IV.    Conclusion

For the reasons set out in part II, above, Mr. Grande asks the Court to decrease the offense level by four levels to reflect his minimal participation in the offense under U.S.S.G. § 3B1.2 (b).  For the reasons set out in part III, he asks the Court to reduce his sentence in light of the factors set out in 18 U.S.C. § 3553.

> JULIO GRANDE
> By his attorney,
>  /s/ Page Kelley
> Page Kelley
>   B.B.O. #548237
> Federal Defender Office
> 408 Atlantic Avenue, 3rd Floor
> Boston, MA  02110
> Tel: 617-223-8061

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 17, 2006.

>  /s/ Page Kelley
> Page Kelley